# Reese *v.* The State.

*Indictment for Receiving Seed-Cotton after the Hour of Sunset and before the Hour of Sunrise of the next succeeding Day.*

1. *Construction of statutes.*—When a statute is plain and unambiguous, whether expressed in limited or general terms, the legislature is presumed to have meant what they have plainly expressed; and hence, no room is left for construction.

2. *Construction of penal statutes.*—Penal statutes are to be strictly construed, but not so strictly as to defeat the obvious intention of the legislature.

3. *Liability of agent to criminal law.*—An agent or servant can not be excused for a violation of the criminal law, because the act was done in the course of his agency or servitude.

4. *Receiving seed-cotton after sunset and before sunrise of the next succeeding day; statute construed.*—An agent of a mortgagee who receives seed-cotton, conveyed by the mortgage, from the mortgagor for his principal within the prohibited hours, is guilty under the provisions of the statute making it a misdemeanor to buy, sell, *receive*, barter, or dispose of any cotton, etc., after the hour of sunset and before the hour of sunrise of the next succeeding day (Code of 1876, § 4369).

APPEAL from Russell Circuit Court.

Tried before Hon. H. D. CLAYTON.

At the fall term, 1880, of said court, the defendant, appellant here, was indicted for buying or receiving one hundred pounds of seed-cotton after the hour of sunset and before the hour of sunrise of the next succeeding day; and at a subsequent term

[Reese v. The State.]

he was tried and convicted. The evidence tended to show that at a late hour of the night one Martin carried a basket of seed-cotton to the residence of the defendant, and by his direction, then given, "emptied the said basket of seed-cotton on a pile of seed-cotton on the front piazza of defendant's said dwelling;" and defendant gave to Martin a pint of whiskey; that Martin and defendant were tenants on the same plantation; that one Cobb, a merchant residing and doing business about twenty miles distant from said plantation, had a mortgage on Martin's crop, the debt secured by which was not then due; and that said Cobb had authorized defendant to receive Martin's crop of cotton for the purpose of having it ginned and delivered to him.

The court charged the jury, *ex mero motu*, among other things, "that though they might find from the evidence, that said Cobb had a mortgage on the crop of said Martin, and that Cobb had authorized defendant to receive seed-cotton from Martin for the purpose of being ginned and delivered to Cobb, such authority would not protect the defendant, if he received it at his dwelling house after sunset and before sunrise of the following day." To this charge the defendant excepted. The same question was also raised by charges requested by him, and refused by the court.

Name of appellant's counsel not disclosed by the record.

H. C. TOMPKINS, Attorney-General, for the State.

BRICKELL, C. J.—The indictment is founded on the statute (Code of 1876, § 4369), rendering it a misdemeanor to "buy, sell, receive, barter, or dispose of any cotton, corn, wheat, oats, peas, or potatoes, after the hour of sunset and before the hour of sunrise of the next succeeding day," with an exception of sales, not now material to be noticed.

The question now raised is, whether the agent of a mortgagee, receiving seed-cotton from the mortgagor, the subject of the mortgage, within the prohibited hours, is guilty of the statutory offense. The words of the statute are plain and unambiguous; and no rule is more firmly established than that which pronounces that, when a statute is plain and unambiguous, whether expressed in limited or general terms, the legislature shall be intended to mean what they have plainly expressed; and, of consequence, there is no room left for construction. One of the acts plainly denounced is receiving either of the agricultural products enumerated, within the prohibited hours; not more plainly denounced is the act of buying, or of selling, or of bartering such products within that period. There is no more

[Chapman v. The State.]

reason or room for excusing the one of these acts than the other. And there is *receiving*, within the plain meaning of the statute, whenever there is a change of the possession—when one parts with the control of the product, and another takes and accepts it. Martin, though he may have mortgaged the cotton to Cobb, yet, had the actual and the legal possession, which could be changed only by a delivery to the latter, and the delivery would not be complete until he accepted it. Penal statutes are to be strictly construed, but not so strictly as to defeat the obvious intention of the legislature. The words of this statute are not to be narrowed to the exclusion of cases, which, in their ordinary sense, the words comprehend, or in that sense in which the legislature obviously employed them. The evil the statute was intended to suppress, was illicit dealing in the enumerated products, a dealing easily carried on in the night-time and difficult of detection. The remedy it proposed was the prohibition of all dealing by which a change of possession was effected within the prohibited hours, unless such dealing came within the exceptions carefully expressed. The unlawful acts may as well be done by the owner of the products, as by one who is not the owner.—*Gilliam v. State*, 71 Ala. 10. If the mortgagee, in person, had received the cotton in the night-time, he would have done an act contravening the statute and its policy. The same act done by the appellant is equally an infraction of the law. The agent or servant can not be excused for a violation of the criminal law, because the act was done in the course of his agency or servitude.—*State v. Bell*, 5 Port. 365; *Winter v. State*, 30 Ala. 22.

There is no error in the record, and the judgment must be affirmed.