# Hurst *v.* The State.

*Indictment for Aiding Prisoner to escape from Jail.*

1. *Former conviction; single criminal act with different intents, or having different results.*—A conviction under an indictment for introducing a file into the county jail, with the alleged intent to facilitate the escape of a prisoner charged with a misdemeanor (Code, §§ 4002-03), is a bar to another indictment which charges that the act was done with the intent to facilitate the escape of another prisoner, who was confined under a charge of felony. (STONE, C. J., *dissenting.*)

FROM the City Court of Montgomery.
Tried before the Hon. THOS. M. ARRINGTON.
VOL. LXXXVI.

[Hurst v. The State.]

Indictment against Travis Hurst and another, charging that they introduced a file into the county jail of Montgomery, with the intent to facilitate the escape of Charles J. Hughes, who was therein confined on a charge of felony. Plea of former conviction, to which the court sustained a demurrer.

W. A. GUNTER, and E. P. MORRISSETT, for appellant, cited *Johnson v. State*, 12 Ala. 840; *Ben v. State*, 22 Ala. 9; *Gordon v. State*, 71 Ala. 315; *Simco v. State*, 9 Tex. Ap. 348; *Wilson v. State*, 45 Tex. 81; *Wright v. State*, 17 Tex. 158; *Foster v. State*, 39 Ala. 229; *Quitzow v. State*, 1 Tex. Ap. 47; *State v. Damon*, 2 Tyler, Vt. 387; *State v. Williams*, 10 Humph. 101; *Lapham v. State*, 14 Ind. 327; *State v. Nelson*, 29 Me. 329; *Fisher v. Com.*, 89 Amer. Dec. 620; 1 Bish. Crim. Law, § 778.

W. L. MARTIN, Attorney-General, *contra*, cited *Standifer v. State*, 5 Porter, 523; *Smith v. Com.*, 7 Gratt. Va. 593; *Com. v. Andrews*, 2 Mass. 409; *Com. v. Sullivan*, 104 Mass. 552; Wharton's Crim. Pl. & Pr., §§ 470-76, notes, 8th ed.; *State v. Elder*, 65 Ind. 282; *State v. George*, 53 Ind. 434; 66 Ind. 223; *State v. Young*, 6 Amer. Dec. 523; *Roberts v. State*, 58 Amer. Dec. 540, and note.

SOMERVILLE, J.—The defendant was indicted, tried and convicted for conveying into the county jail a *file*, with the intent to facilitate the escape of one Hurst, who was confined under a charge of misdemeanor—the offense being made punishable by fine and imprisonment in the county jail, or sentence to hard labor for the county.—Code, 1886, § 4003. At the same term of the court, the defendant was also indicted, tried and convicted for the same act of conveying into the county jail the same file, with the intent to facilitate the escape of one Hughes, a prisoner confined in the same jail on a charge of felony—this offense being punishable by imprisonment in the penitentiary.—Code, 1886, § 4002. The latter case is the one now before us on appeal.

The defendant, on the latter trial, set up as a defense the conviction in the former case, which plea of *aut refois convict*, on demurrer by the State, was held to be insufficient. It appears from the evidence, that the same act aided both prisoners to escape, and their escape was effected at the same

[Hurst v. The State.]

time. The question is, whether the defendant is guilty of two separate indictable offenses, each of which may be made the basis of an independent prosecution and conviction.

Our constitution, following the parallel principle of the common law, provides, that "no person shall, for the same offense, be twice put in jeopardy of life or limb,"—a safeguard of liberty which, under our Anglo-American system of jurisprudence, has always been regarded by our courts with a sanctity scarcely second to that accorded to the right of trial by jury. The purpose of the courts should be so to apply this constitutional guaranty as to protect the citizen from vexatious criminal prosecutions, and at the same time not to defeat the chief design of our penal laws, which, apart from their reformatory aspect, have in view the double aim of protecting society and preventing crime.

If we hold this plea of former conviction to be bad, we can see no reason why a defendant could not be indicted and convicted one hundred times, in case he should, by a single act, effect the simultaneous escape of a hundred prisoners lawfully confined in a county jail, or other prison. It is the familiar case of a single criminal act, producing several different results, each of which, standing alone, and dissociated from the others, would have been an indictable crime. Is each *result* a separate and distinct crime, liable to be indicted as such, or is it a mere consequence of a single unlawful act done with criminal intent?

An analogous inquiry would be: If one should cast a stone into a crowd, and wound a dozen men at one blow, is he liable to one or a dozen indictments? If he burns a hundred houses, by one act of arson, knowing the probable consequences of his unlawful act, would he be guilty of a hundred crimes? Or, should he blow up a hotel with dynamite, murdering a thousand guests, would he be separately triable for the perpetration of a thousand homicides?

The authorities are in direct conflict on this subject, and we shall make no effort to reconcile them. It is our judgment, that none of the legitimate purposes of punishing crime require the adoption of the policy of multiplying prosecutions in cases of this nature. Such in fact seems to be the policy of our legislation as to framing indictments, as declared by section 4384 of our Penal Code. It is there provided that, "when an act is criminal, if producing different results, such results may be charged in the same count, in the alternative."—Code, 1886, § 4384; Code 1876,

[Hurst v. The State.]

§ 4797.   It has often been decided, that a single crime can not be split up, or subdivided into two or more indictable offenses.   As said in *Moore v. State*, 71 Ala. 307, "a series of criminal charges can not, under our system of jurisprudence, be based on the same offense, or criminal act, at least, as concerns the dignity of the same sovereignty.   If the State elects, through its authorized officers, to prosecute a crime in one of its phases, or aspects, it can not afterwards prosecute the same criminal act under color of another name."

It is accordingly held by the great preponderance of authority, that the stealing of several articles at the same time and place, although they belong to different owners, constitutes but a single indictable crime, and can be prosecuted as such but once.   "An indictment," says Mr. Freeman, "could not be found for the larceny of one of the articles, and after the verdict another indictment sustained for the stealing of the remaining articles.   Indeed, to put such a power in the hands of the prosecuting attorney would be to render the salutary doctrine of prior jeopardy in many instances practically nugatory."—*Roberts v. State*, 58 Amer. Dec. 539, *note*, and cases cited; *Quitzow v. State*, 28 Amer. Rep. 396, and cases cited.

In *Oleson v. State*, 20 Wis. 58, a count of an indictment was held good, which charged the defendant with aiding the escape of two prisoners by a single act, although the prisoners were confined under charges of different grades, and the act of aiding the escape of one of the prisoners was punishable more severely than that of aiding the escape of the other.   This decision can rest only on the theory, that the two escapes resulted from but one criminal act.

In *Woodford v. People*, 62 N. Y. 117; s. c., 20 Amer. Rep. 464, the indictment charged the burning of a number of houses, belonging to different owners, by a single act, at one time and place.   It was held to charge but one offense, and not, therefore, bad for duplicity, the court observing as follows:   "A conviction upon separate indictments could not be had for each separate house, although an indictment may have been good for any one of them, and a conviction or acquittal upon such an indictment would be a bar to an indictment for burning any other house burned by the same act.   These consequences must follow from the position, that there was but one crime committed in respect to all the dwelling-houses, and that the respective counts charge but

[Hurst v. The State.]

one crime." To the same effect precisely is the English case of *Regina v. Trueman*, 8 Car. & P. 727, where the burning of five houses, belonging to different persons, was held to be but one transaction, and indictable only as a single felony.

In *Ben v. State*, 22 Ala. 9; 58 Amer. Dec. 234, a count in an indictment charging the administering of poison to three different persons, by one act, was held to be good as charging but a single offense.

So, it.has been held, that a libel on two distinct persons, by one act, may be charged in the same count.—*Rex v. Benfield*, 2 Burr. 98; Whart. Cr. Pl. & Pr., sec. 254.

In *Clem v. State*, 42 Ind. 420: 13 Amer. Rep. 369, where the same act of unlawful shooting resulted in the death of two persons, it was held that acquittal or conviction on a trial for the murder of one would be a good defense on a second trial for the alleged murder of the other. The killing, it was said, constituted but one crime, and "the State can not divide that which constitutes but one crime, and make the different parts of it the bases of different prosecutions."

In *State v. Damon*, Tyler, 387, it was held by the Supreme Court of Vermont, that, where one blow produces two separate assaults and batteries on different persons, a conviction of the one may be pleaded in bar to an indictment for the other.

In *State v. Cooper*, 1 Green (N. J,), 361; 25 Amer. Dec. 490, it is held that a defendant's acquittal of the crime of *arson*, which resulted in the unintentional destruction of the life of a human being, was a good defense, under the plea of *autrefois acquit*, to an indictment charging him with the *murder* of the same person whose life was destroyed by the act of arson. It was said by the court, that a defendant could not lawfully be punished for two distinct felonies, growing out of the.same identical act, and where one is a necessary ingredient of the other. Where the State has selected and prosecuted one of the crimes to conviction, it was said to present "a proper case to interpose the benign principle, that a man shall not be twice put in jeopardy for the same offense, in favor of the life of the defendant."

In *State v. Lewis*, 2 Hawkes (N. C.), 78; 11 Amer. Dec. 741, where two indictments were found against a defendant, one for burglary and larceny, and the other for robbery, based on the same transaction, it was held that a conviction

VOL. LXXXVI.

[Hurst v. The State.]

of larceny under the first was a bar to a trial for robbery under the second.

We might add to this opinion many other decisions of like import to those above cited, but deem it unnecessary. So, there are other adjudications holding to the opposite doctrine.—*State v. Nash*, 86 N. C. 650; 41 Amer. Rep. 492, *note* p. 475; *State v. Elder*, 32 Amer. Rep. 69; *Ben v. State*, 58 Amer. Dec., *note* 240-242; *Teat v. State*, 54 Amer. Rep. 708; *Roberts v. State, Ib., note* 539-540; Whart. Cr. Pl. & Pr. § 470. Some of the modern decisions make a distinction between cases where the two pleas of *autrefois acquit* and *autrefois convict* are interposed, which seems to be supported by sound reason; but this we do not stop to discuss.—*Simco v. State*, 9 Tex. App. 348; *Roberts v. State*, 58 Amer. Dec. 547-548. The case of *State v. Standifer*, 5 Port. 223, does not necessarily conflict with the views above expressed. See, also, *State v. Johnson*, 12 Ala. 840; 46 Amer. Dec. 284; *Gordon v. State*, 71 Ala. 315; *Fiddler v. State*, 7 Humph. 508.

In the case at bar, the gist of the offense charged is the act of carrying the file into the jail, with the criminal intent of aiding certain prisoners to escape. This intent was compound, being more or less aggravated according to the nature of the crime with which the escaping prisoners were charged. It was competent for the State to elect to prosecute for the higher grade of the crime—the aiding of the one to escape who was charged with felony. The prosecutor, in the language of Mr. Bishop, "may carve as large an offense out of the transaction as he can, but he must cut only once."—1 Bish. Cr. Law, § 1060.

The principle of the foregoing decisions, in our judgment, supports the sufficiency of the plea of former conviction. It follows that the court erred in sustaining the demurrer to this plea.

The judgment will accordingly be reversed, and the cause remanded.

STONE, C. J., dissenting.—Crime consists of an evil intent, carried into effect, or attempted to be carried into effect, by a single act, or series of connected acts, having that object in view. When the evil intent has but a single object, and the act done or attempted is confined in its purpose to that object, then, though the act may by misadventure produce more than one result, each of which, separately con-

[Cooper v. Tle State.]

sidered, is a crime, only one crime is committed, and only one conviction can be had. When, however, the offender is influenced by more than one independent, evil intent, aimed at the accomplishment of different objects, or criminal results, then a single act done or attempted in pursuance thereof may amount to more than one indictable offense. If not, the slayer of a multitude with dynamite, or with a Gatling gun, is, in the eyes of the law, no more guilty than the murderer who kills his single victim. If the offender in this case intended to liberate more prisoners than one, then I am not able to perceive any violation of the constitution in holding him criminally accountable for each separate prisoner he set at liberty.—4 Amer. & Eng. Encyc. of Law, 790. I will not collate the authorities opposed to the conclusion of my brothers, but would prefer to follow them to the extent above indicated.